# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

THE FAMILIES ADVOCATE, LLC,
an Arizona Limited Liability Corporation,
as Conservator of D.M., a Minor;
and SARINA BONNO and JULIAN MORENO,
Individually                                                                    PLAINTIFFS

V.                              CASE NO. 3:16-CV-00114

SANFORD CLINIC NORTH d/b/a
SANFORD CLINIC JAMESTOWN;
SARAH SCHATZ, M.D.; and LUTHERAN
CHARITY ASSOCIATION d/b/a
JAMESTOWN REGIONAL MEDICAL CENTER                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 127) of the Honorable Alice R. Senechal, United States Magistrate Judge for the District of North Dakota, filed in this case on January 31, 2019, concerning a Motion for Partial Summary Judgment (Doc. 54) filed by Defendants Sanford Clinic North d/b/a Sanford Clinic Jamestown and Sarah Schatz, M.D. ("the Sanford Defendants"). Defendant Lutheran Charity Association d/b/a Jamestown Regional Medical Center ("JRMC") joined in the Motion of the Sanford Defendants. *See* Doc. 62.

Defendants contend that the claims of D.M.'s parents, Sarina Bonno and Julian Moreno ("the Parents"), including a claim for D.M.'s pre-majority-age medical expenses, are barred by the statute of limitations, and that the damages they purport to seek for D.M.'s siblings are not recognized under North Dakota law. Plaintiffs respond that summary judgment is not proper because there remain genuine issues of material fact as to when the Parents' claims accrued. As to the siblings' claims, Plaintiffs agree they are

1

not entitled to such damages, but they think the jury should be permitted to hear expert testimony concerning how D.M.'s injuries have impacted the entire family, including the siblings.

The Magistrate Judge recommends denying the motions with respect to the statute of limitations issue, but granting the motions with respect to the siblings' claim for damages (to the extent the siblings make such a claim). If, however, the Court rejects the first recommendation, then Judge Senechal recommends that D.M. nevertheless be allowed to pursue recovery of pre-majority-age medical expenses in his own right.

The Sanford and JRMC Defendants filed timely objections to the R&R on February 14th (Docs. 137 and 138). Plaintiffs responded to the objections on February 22nd (Doc. 139). Defendants then filed separate replies on February 26th (Docs. 142, 143). Now that the matter is ripe, the Court has conducted a *de novo* review as to all proposed findings and recommendations to which Defendants have raised specific objections. *See* 28 U.S.C. § 636(b)(1). As explained below, the R&R is **ADOPTED IN FULL**.[1]

## I. BACKGROUND FACTS

Though the R&R recites the relevant facts at issue on summary judgment, a brief recap will give context to the Court's discussion of the Defendants' objections.[2] The

---

[1] As explained in part IV.A.4. of the Opinion, the Court does not reach the issue of whether D.M., a minor, may pursue an action on his own for medical expenses incurred prior to attaining the age of majority. Accordingly, this opinion should not be construed as ruling on that issue one way or the other.

[2] The facts are stated in the light most favorable to the Parents.

following dates and facts are drawn from the R&R, which in turn drew them from the affidavits and deposition transcripts submitted by the parties.[3]

- **May 19, 2014.** D.M. was born vaginally. His mother testified that "the baby was not crying. He was limp, and he was purple. He didn't make one noise." (Doc. 67-3 at 71). She knew D.M. was not breathing, and she witnessed the nurses "hand-pumping him with oxygen." *Id.* at 73. D.M.'s father witnessed the same thing and confirms these facts in his own deposition. *See* Doc. 67-4 at 32-34.

- **May 19, 2014.** D.M. was emergently transferred by helicopter from JRMC to the Neonatal Intensive Care Unit ("NICU") at Sanford Hospital in Fargo.

- **Sometime between May 19-June 21, 2014** (Sanford Hospital, NICU). According to D.M.'s father, while D.M. was in the NICU, doctors told him that an MRI on D.M. revealed "there was some damages [sic] done." (Doc. 67-4 at 39-40). The doctors told him the damage was caused by "loss of air." *Id.* at 40. Beyond that, D.M.'s father does not remember being told any specifics about the MRI, nor does he remember having other discussions with doctors prior to D.M.'s discharge from Sanford Hospital. *Id.*

- **June 21, 2014.** D.M. is discharged home from Sanford's NICU.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

[3] Though the parties apparently do not dispute the accuracy of these facts, the Defendants dispute the relevance of certain facts, and JRMC contends that the Magistrate Judge places undue weight on the facts that predicate her recommendation to deny summary judgment.

- **November 2014.** About five months after D.M.'s discharge from Sanford, D.M.'s mother took D.M. back to JRMC to show him to some of the nurses who had been present during the delivery. (Doc. 67-4 at 142-43). She testified she took pictures with the nurses and thanked them for their work during D.M.'s birth. *Id.*

- **August of 2015.** D.M.'s mother was watching television and saw a legal advertisement associating birth injuries with cerebral palsy. She called the telephone number listed in the commercial to consult with an attorney. Later, the Parents retained these attorneys to investigate whether D.M.'s injuries resulted from malpractice.

- **May 13, 2016.** Plaintiffs filed their Complaint against the Defendants for medical malpractice.

- **June 22, 2016.** Action commenced against Sanford Defendants.

- **June 23, 2016.** Action commenced against JRMC.

## II. SUMMARY OF NORTH DAKOTA'S DISCOVERY RULE AND PRESENT PROCEDURAL POSTURE

Defendants' motions for partial summary judgment contend that the Parents' claims, including those for D.M.'s pre-majority-age medical expenses, are barred by the two-year statute of limitations applicable under North Dakota law for medical malpractice. NDCC 28-01-18(3). More specifically, Defendants argue that the Parents' lawsuit was "commenced" about 35 days too late. The ultimate resolution of this issue hinges on when their cause of action is deemed to have accrued.

In North Dakota, a cause of action for medical malpractice "generally accrues on the date the alleged act or omission occurred." *Schanilec v. Grand Forks Clinic, Ltd.*, 599 N.W.2d 253, 255 (N.D. 1999). However, "to balance the need for prompt assertion of claims against the policy favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it," North Dakota has attempted to "ameliorate the often harsh and unjust results of such a rigid rule" with the adoption of a "discovery rule." *Id.*

Under the discovery rule, the two-year limitations period for medical malpractice claims begins to run "when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence." *Id.* at 255-56 (quotation and citation omitted). "To trigger the running of the statute of limitations, [a plaintiff] need not fully appreciate the potential liability or even be convinced of his injury; he need only know enough to be on notice of a potential claim." *Id.* at 258. Pursuant to North Dakota law, knowledge of a potential claim means knowledge of the possible negligence of a defendant or defendants. *Id.* It is not necessary for a plaintiff to possess complete understanding of the full extent of the injury, or to be informed as to all the possible causes of the injury or all the possible claims that could be brought against every defendant in order to trigger the discovery rule. Instead, the rule is triggered when a plaintiff acquires "enough" information "to be on notice of a potential claim" for legal malpractice. *Id.* The existence of enough knowledge "is ordinarily a fact question which is inappropriate for summary judgment, but the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclusion." *Id.* (internal quotation and citations omitted).

"A civil action is commenced by the service of a summons." N.D. R. Civ. P. 3. Here, it is undisputed that the action was commenced for statute of limitations purposes on June 22, 2016 (for claims against the Sanford Defendants), and June 23, 2016 (for claims against JRMC). So, to survive the dismissal of their claims on summary judgment, the Parents must demonstrate that there is a genuine, material dispute of fact about whether they had sufficient knowledge to satisfy North Dakota's discovery rule prior to June 23, 2014, the latest date of accrual for claims against both sets of Defendants.[4]

In moving for summary judgment, Defendants contend that the Parents had enough knowledge on the day D.M. was born to trigger accrual for limitations purposes. Since the Parents were on notice of complications at birth that necessitated resuscitation efforts, Defendants argue that the statute of limitations (on the Parents' separate claims) expired on May 19, 2016, two years after D.M. was born. And, to the extent the Parents had insufficient knowledge for these purposes on D.M.'s birthdate, then Defendants alternatively argue that the Parents surely acquired legally sufficient notice during their child's hospitalization in the Sanford NICU—which leads to the same legal result. In other words, D.M. was discharged from the NICU on June 21, 2014, so if the Parents are charged with possessing enough knowledge by that date, then suit was still commenced at least one or two days too late.

---

[4] In the interest of brevity, the Court will assume in this Opinion that suit was commenced on June 23, 2016 (the date JRMC waived service), even though the Court recognizes that claims against the Sanford Defendants were commenced the previous day, on June 22, 2016. This shorthand is inconsequential to any material facts in the record. Calculating backwards by two years, the heart of the inquiry, then, is to determine the state of the facts and circumstances that the Parents knew—or reasonably should have known—by June 23, 2014.

6

The Parents adamantly disagree with Defendants and maintain that they did not know—nor should they have been expected to know through the exercise of objectively reasonable diligence—either the mechanism or extent of D.M.'s injury, much less that the injury was a consequence of medical negligence.

Judge Senechal, applying North Dakota's discovery rule, observed that the date on which the statute of limitations is deemed to have accrued is ordinarily a question of fact. Given the nature and context of the facts and circumstances here, she found that there are genuine issues of material fact about when the Parents should be charged with legally sufficient notice as to the cause of D.M.'s injury and of Defendants' possible negligence.

The Defendants have filed separate sets of objections. These objections make some specific suggestions of error, but taken collectively, they generally argue that the Magistrate Judge misapplied North Dakota's discovery rule to the evidence presented in the summary judgment record.

This Court reviews *de novo* those portions of an R&R to which an objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3). Any portions of an R&R to which no objections have been made should be reviewed under a "clearly erroneous" standard. *See, e.g., Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Court will consider each of Defendants' objections in turn, beginning first with the appropriate legal standard for deciding motions for summary judgment, and then continuing with a discussion of the Sanford Defendants' objections, followed by JRMC's objections.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

### IV. DISCUSSION

#### A. Sanford Defendants' Objections

##### 1. Objection One

The Sanford Defendants first object to what they characterize as the Magistrate Judge's failure to recognize the appropriate burdens of proof when evaluating a statute of limitations defense on summary judgment. They contend that Plaintiffs have the burden of proof on issues related to the application of the discovery rule, and the Magistrate Judge somehow erred in failing to hold Plaintiffs to their burden. For summary

8

judgment purposes, this turns out to be a distinction without a difference. The objection is **OVERRULED**.

North Dakota law provides, as the R&R explained, that "[g]enerally, a defense based on the statute of limitations in a civil proceeding is an affirmative defense, and the party relying on the statute of limitations has the burden of proving the action is barred." *D.E. v. K.F.*, 825 N.W.2d 832, 835 (N.D. 2012). The burden of proof may shift to the plaintiff to show that an exception applies to extend its expiration. *Kimball v. Landeis*, 652 N.W.2d 330, 339 (N.D. 2002). For example, the burden would shift if a plaintiff were relying on equitable tolling. *See id.* Another example would be an exception based on fraudulent concealment. *See Wheeler v. Schmid Labs., Inc.*, 451 N.W.2d 133, 137 n.6. As the objection has been framed here, the question is whether the discovery rule is an "exception" to the statute of limitations, or whether it is merely a rule that defines the moment when the statute begins to accrue. To this point, at least one North Dakota Supreme Court case has characterized its discovery rule as "an exception to the limitations," which, "if applicable, determines when the claim accrues for the purpose of computing limitations." *Wells v. First Am. Bank W.*, 598 N.W.2d 834, 838 (N.D. 1999).

So, even though that explanation is not entirely helpful, the Court will assume (without specifically deciding now) that the Sanford Defendants are correct, and the Parents will have the burden at trial to establish—via the discovery rule—that their separate claims accrued on or after June 23, 2014. But that assumption has little to do with the Parents' burden on summary judgment. As Judge Senechal correctly observed, the existence of sufficient knowledge under the discovery rule "is ordinarily a fact question which is inappropriate for summary judgment," and here there are too many disputed

facts and circumstances for this Court to say that "reasonable minds could draw but one conclusion." *Schanilec v. Grand Forks Clinic, Ltd.*, 599 N.W.2d 253, 258 (N.D. 1999) (quotation and citation omitted). The Court agrees with the R&R's recommendation that there is a genuine, material dispute as to whether all elements of the discovery rule were satisfied prior to June 23, 2014.

### 2. Objection Two

In the second objection, the Sanford Defendants claim that the Magistrate Judge failed to correctly apply North Dakota's discovery rule to the undisputed facts in this case, and that prevailing law mandates a finding that the Parents' claims are time-barred. The Court disagrees and **OVERRULES** the objection.

The Sanford Defendants seize upon the Parents' assertion that they did not connect the dots to understand that D.M.'s injury was caused by negligence until they first consulted with their attorneys in August of 2015, when D.M. would have been about fifteen months old. After quoting from the very same cases relied upon by Judge Senechal in her R&R, the Sanford Defendants correctly observe that the statute of limitations will begin to run "when a reasonable person would recognize the need to investigate possible negligence, based on the facts available to him or her." (Doc. 137 at 5). And when properly citing *Froysland v. Altenberg*, 439 N.W.2d 797 (N.D. 1989), they accurately observe that legally sufficient notice is a much lower quantum of knowledge than having one's suspicions confirmed by an attorney. (Doc. 137 at 7-8). But Defendants are mistaken when they conclude that a plaintiff's actual knowledge of a claim is irrelevant. After all, they cite to *Schanilec*, 599 N.W.2d at 255-56, for the proposition that a claim begins to accrue "when the plaintiff knows, or with reasonable diligence should know, of (1) the

10

injury, (2) its cause, and (3) the defendant's possible negligence." (Doc. 137 at 5). So, to the extent Plaintiffs mark the date they acquired actual knowledge of a claim—and to the added extent that the R&R may mention that as well—it is a proper and permissible part of the equation, albeit certainly not dispositive here.

More to the point, this Court does not read the R&R to suggest that the date when the Parents saw the lawyers' television ad (or when they subsequently spoke with their lawyers about D.M. specifically) had anything to do with Judge Senechal's recommendations. Instead, the Magistrate Judge: (1) conducted an exhaustive review of the law; (2) correctly explained the objective criteria and boundaries of the discovery rule—including the same standards adopted and applied in the very same cases on which the Sanford Defendants now rely upon for their objections;[5] and (3) properly focused and premised her recommendations on the nature and scope of information reasonably available to the Parents throughout D.M.'s admission to Sanford's NICU.

The Sanford Defendants contend that the Parents had sufficient information and knowledge to trigger discovery-rule accrual by no later than June 21, 2014—the date of D.M.'s discharge from the NICU. At the nearest margin, that would mean the Parents commenced their separate claims two days too late. And while it is true that a reasonable jury might agree with Defendants based on the evidence to be presented at trial, it is equally true that a reasonable juror could consider the facts in the summary judgment

---

[5] The R&R addresses and explains not only *Schanilec*, *Zettel v. Licht*, 518 N.W.2d 214 (N.D. 1994), *Long v. Jaszczak*, 688 N.W.2d 173 (N.D. 2004), *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133 (N.D. 1990), and *Froysland*, but also *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D. 1968), Anderson v. Shook, 333 N.W.2d 708 (N.D. 1983), and *Klade v. Altru Health System*, D.N.D. Case No. 2:15-CV-72 (July 29, 2016 Order). (Doc. 127 at 9-14).

11

record and objectively conclude that the Plaintiffs had not acquired enough knowledge to invoke accrual of the claim until some point on or after June 23, 2014.

In the first part of their argument, the Sanford Defendants identify several facts that were unquestionably known by the Parents early-on. For example, the Parents certainly had knowledge of D.M.'s color, tone, and need for resuscitation at birth, which caused them "many concerns with how [he] was doing." (Doc. 137 at 9). And they obviously knew that D.M. was taken emergently by helicopter from JRMC to Sanford Hospital in Fargo, where he was admitted to the NICU. *Id*. According to Defendants, that alone is sufficient knowledge to alert a reasonable person that negligence had occurred, and thus the statute began to accrue on day one. The Court is very skeptical of this argument, because it suggests a bright line that any perinatal complication is enough to trigger the statute of limitations in every birth trauma case. Such a conclusion is not supported the case law,[6]

---

[6] For example, in *Froysland* the plaintiff experienced symptoms of ulnar nerve compression following heart surgery on August 24, 1983. This was a known short-term complication of the procedure—one that "usually ended within a couple of months." *Froysland*, 439 N.W.2d at 797. Froysland's symptoms did not go away, leading to a neurosurgical consult in August 2014, and ultimately corrective surgery in early September 1984. At that point Froysland believed the complication in his particular case was the result of negligence, and so he informally "sought financial assistance from [the hospital where the heart surgery occurred]." *Id*. Over two years later, Froysland filed suit against his heart surgeon and the hospital, and still later filed suit against the anesthesiologist. The Supreme Court, applying its discovery-rule, found that "Froysland knew his injury was related to his first surgery when he sought financial aid from the hospital by early September 1984. He knew, or had reason to know, that someone associated with that first surgery was responsible. At that point, he knew of the injury, of its cause, and of the possible negligence, . . ." *Id*. at 798. The Court therefore concluded that Mr. Froysland's claim was time-barred, because he waited more than two years after putting the hospital on notice to file the first of his suits. The point here is that under the Sanford Defendants' view of the discovery rule, the accrual date would have been triggered on August 24, 1983, when Mr. Frosyland merely awakened from surgery and noticed pain in his arm. But as the North Dakota Supreme Court recognized in that case, all three components of the discovery rule must be present to trigger accrual. *Id*.

nor does it comport with common sense. No reasonable person would conclude that every life-flight from the delivery room to the NICU is on account of medical malpractice.

In the second part of this objection, the Sanford Defendants contend that if not known at birth, then the Parents certainly acquired enough knowledge during the NICU admission to trigger accrual of the limitations period. For example, Mr. Moreno recalled one discussion with a doctor regarding an MRI, to the effect that "there was some damages done." But he couldn't recall any specifics, only that he was told the cause was "loss of air." (Doc. 67-4 at 35-39). Mr. Moreno also recalled that D.M. was given a prescription for seizure medication when D.M. was discharged, but he didn't recall any discussion as to the cause of the seizures. (Doc. 67-4 at 39). This is the entirety of the factual record that the Sanford Defendants rely upon in making this part of their argument. They have not pointed this Court to any other specific knowledge that they attribute to the Parents as of June 23, 2014. And it is not this Court's job to rummage through the rest of the voluminous underlying record on its own, as if it were a pig in search of truffles.

In making their second objection, the Sanford Defendants focus exclusively on the known fact of an "injury"—without any discussion as to what the Parents' reasonably should have known about the origin or mechanism(s) that caused the injury, much less why or which medical provider might be responsible. In other words, Defendants' argument completely ignores the second and third parts of the discovery rule equation. The undisputed facts here concern the Parents' knowledge that D.M. suffered an injury. Those facts alone do not lead this Court to believe that "reasonable minds could draw but one conclusion" as to when the accrual date was triggered. *Schanilec,* 599 N.W.2d at 258. Therefore, the Magistrate Judge was correct in denying summary judgment.

13

### 3. Objection Three

Objection Three argues that the Magistrate Judge cited to cases from other jurisdictions, and those cases are distinguishable from the instant one. A review of the R&R confirms that the Magistrate Judge acknowledged the non-binding nature of these cases and carefully explained how they were similar to the instant one and helpful to the Court's understanding of North Dakota's discovery rule. For example, the R&R cites to the District Court of North Dakota's decision in *Klade* and acknowledges in a footnote that "[a] federal district court's interpretation of North Dakota law is not binding on North Dakota courts . . . ." (Doc. 127 at 13 n.2). Nevertheless, the Court agrees with the Magistrate Judge that the *Klade* decision is helpful in explaining the discovery rule. In *Klade*, the defendant argued—as the Sanford Defendants do here—that "that the plaintiffs were on notice of a potential claims as soon as they learned of [the injury], contending any reasonable layperson should have been able to conclude a nexus existed between the [medical procedures and the injury]." (Doc. 127 at 14, citing *Klade*). The district judge accurately summarized North Dakota law in finding that "[k]nowing an injury exists is not the same as knowing the cause of the injury or whether the cause is likely the result of malpractice." *Id.*, citing *Klade* at 7.

Though the Court agrees with the Sanford Defendants that "[t]he Order in <u>Klade</u> is not authoritative here," the R&R's citation to and explanation of the facts and holding on summary judgment in *Klade* was instructive. So, too, was the R&R's analysis of other federal cases. Finally, the Court notes that the Sanford Defendants took the time and space in their own briefing on summary judgment to mention persuasive out-of-circuit cases (*See e.g.*, Doc. 74 at 3), so it is hard to understand why they criticize similar content

14

in the R&R. The Magistrate Judge's discussion of these and other "nonbinding" cases was neither inaccurate nor misleading. Accordingly, Objection Three is **OVERRULED**.

### 4. Objection Four

In their fourth objection, the Sanford Defendants disagree with the Magistrate Judge's recommendation—offered in the contingent event that this Court were to dismiss the Parents' claims as timed barred—that D.M. should nevertheless be allowed to pursue his pre-majority-age medical expenses in his own right, due to the application of an exception to the common-law's rule general rule. However, since the Court has adopted the R&R and declined to dismiss the Parents' claims on summary judgment, the Court does not reach and need not consider the Magistrate Judge's alternative recommendation here. Objection Four is **MOOT**.

### B. JRMC's Objections

#### 1. Objection One

JRMC's first objection is that the Magistrate Judge erred in giving dispositive weight to the fact that no health care providers told the Parents that the Defendants did anything wrong. The objection is **OVERRULED**. The Court disagrees with JRMC that the Magistrate Judge gave dispositive weight to any one fact. Instead, she appropriately recited all facts in dispute and considered them in the light most favorable to Plaintiffs on summary judgment. The fact that no health care providers suggested to the Parents the possibility of medical malpractice is just one of many facts that pertain to the Parents' knowledge of possible claims of negligence.

## 2. Objection Two

In JRMC's second objection, they argue that the question of whether a claim has accrued is objective, rather than subjective—and they take that to mean that the particular facts surrounding when the Parents first knew of possible negligence claims are "immaterial" to the analysis. (Doc. 138 at 5). This is an oversimplification (and misstatement) of the law, as understanding the particular facts surrounding a victim's knowledge of a negligence claim is *material*, not immaterial, when evaluating a statute-of-limitations defense. The question of whether a claim has accrued is "objective" in the sense that a victim's age, background, education, or other personal, subjective information is irrelevant to establishing the victim's knowledge, since the legal standard asks when *a reasonable person*, through the exercise of reasonable diligence, would know a fact. *Wheeler v. Schmid Labs., Inc.*, 451 N.W.2d 133, 137 (N.D. 1990). Judge Senechal did not give dispositive weight to any subjective facts surrounding the Parents' knowledge of negligence; rather, she focused on what facts the Parents knew and whether knowledge of those facts would be sufficient to put a reasonable person on notice that a potential claim existed.

In over-emphasizing the importance of the "objective inquiry," JRMC also fails to fully acknowledge that "[t]he malpractice plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment" and should only be resolved by the court "if the evidence is such that reasonable minds could draw but one conclusion." *Wheeler*, 451 N.W.2d at 137. Reasonable minds can disagree about when a reasonable parent, knowing the facts D.M.'s parents did, would have had sufficient knowledge of the Defendants' possible negligence. Objection Two is **OVERRULED**.

### 3. Objection Three

JRMC's third objection is that the Magistrate Judge gave improper dispositive weight to the notion that the Parents did not become aware of a possible claim until they consulted with an attorney. Just as with JRMC's Objection One, the Court disagrees that the Magistrate Judge gave dispositive weight to any one fact. As the Court pointed out, *supra*, it will *not* be necessary for the Parents to prove to the jury that they first became aware of a possible claim when they consulted an attorney; instead, what they must prove is that they first knew of the existence of a possible claim *on or after* June 23, 2014. Objection Three is **OVERRULED**.

### 4. Objection Four

JRMC's fourth and final objection concerns what JRMC characterizes as the R&R's undue focus on the timing of D.M.'s cerebral palsy diagnosis. JRMC contends that the accrual date need not wait for the full extent of D.M.'s injury to become known, *i.e.* his particular diagnosis of cerebral palsy. While there may be some merit to that argument in isolation, the Court finds that this, too, is a fact issue that the jury should resolve. Objection Four is **OVERRULED**.

### V. CONCLUSION

For the reasons stated herein, the R&R (Doc. 127) is **ADOPTED IN FULL**. The Motions for Partial Summary Judgment (Docs. 54, 62) are **DENIED**. The question of whether D.M.'s parents' claims for damages are barred by the applicable statute of limitations will be put to the jury.

**IT IS SO ORDERED** on this 7th day of April, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE