IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

THE FAMILIES ADVOCATE, LLC,
an Arizona Limited Liability Corporation,
as Conservator of D.M., a Minor;
and SARINA BONNO and JULIAN MORENO,
Individually                                                                                    PLAINTIFFS

V.                                       CASE NO. 3:16-CV-00114

SANFORD CLINIC NORTH d/b/a
SANFORD CLINIC JAMESTOWN;
SARAH SCHATZ, M.D.; and LUTHERAN
CHARITY ASSOCIATION d/b/a
JAMESTOWN REGIONAL MEDICAL CENTER                          DEFENDANTS

## ORDER

Now before the Court are Defendants' Motions in Limine to Exclude Day in the Life Video (Docs. 199, 226). Defendants filed these motions protectively, before they were provided with copies of the day-in-the-life video that Plaintiffs propose to show to the jury. The Court held a telephonic conference with the parties on June 11, 2019, in large part to discuss Defendants' reaction to viewing the actual video. The Court inquired of Defendants whether they still maintained that the entire video should be excluded, as they had argued in their motions, and they confirmed that they did.

The day-in-the-life video is exactly fifteen minutes long and depicts mostly D.M. and his mother, but it also contains some footage of D.M.'s grandmother and his two younger brothers. The video contains no audio. It depicts D.M. performing daily tasks with the assistance of his mother and grandmother. These tasks include getting D.M. up, changing his diaper, feeding him breakfast and medication, getting him dressed, performing some physical therapy, placing him in a walker outdoors, placing him in a car

1

along with his wheelchair, strapping him into his wheelchair, sitting with him in a swing at a playground, undressing him, giving him a shower, dressing him for bed, playing with him, having him move around on the floor on all fours, and putting him to bed.

Defendants argue that this kind of video does nothing more than appeal to the emotions, passion, and prejudice of the jury and serves no other meaningful purpose. They also argue that the actions depicted in the video may be explained to the jury with witness testimony alone, such that the video would simply be duplicative of witness testimony. They ask that the video be excluded under Rule 403.

After viewing the video and considering Defendants' arguments, the Court finds there is nothing fundamentally inadmissible about a day-in-the-life video, and there is nothing about this particular video that would likely lead to unfair prejudice, as described in Rule 403. The Court has reviewed the Tenth Circuit's opinion in *Bannister v. Town of Noble, Oklahoma*, 812 F.2d 1265 (10th Cir. 1987), for helpful guidance on these issues, as the Eighth Circuit's precedent on the admissibility of day-in-the-life videos is sparse. The *Bannister* Court observed: "These films are . . . . often desired because films illustrate, better than words, the impact the injury had had on the plaintiff's life." *Id.* at 1269 (internal quotation marks and citation omitted). The Court cautioned, however, against allowing "egregious self-serving conduct" to be depicted, as well as scenes showing "[e]xaggerated difficulty in performing ordinary tasks"—as such depictions could present a danger of undue prejudice. *Id.* Similarly, the Court noted that "conduct that serves little purpose other than to create sympathy for the plaintiff is highly prejudicial." *Id.* (quotation marks and citation omitted and cleaned up).

The day-in-the-life video at issue in *Bannister* was deemed admissible by the trial court, and the Court of Appeals found no abuse of discretion. This was because the film simply and accurately portrayed the victim's daily routine of "getting around school, getting into his car, pumping gasoline for his car, and performing several different tasks in his home." *Id.* at 1270. Further, the Court found that any potential prejudice implicated in showing the film was "significantly reduced" by the fact that the film's subjects were available for cross-examination at trial. *Id.*

In the case at bar, the risk of prejudice in showing the day-in-the-life video to the jury is negligible. First, D.M.'s mother and grandmother, who are depicted in the video, will be present at trial for cross-examination. Second, the video depicts D.M.'s daily tasks in a rather dispassionate way and is neither overly sympathetic nor emotional. For example, D.M. is never shown crying, complaining, refusing to perform a task, or demonstrating pain in the video. Third, the video does not depict D.M. or any of his caregivers showing exaggerated difficulty in performing any task. Finally, the Court finds that the video will be useful to the jury in depicting D.M.'s daily tasks in a way that witness testimony alone could not accurately capture. Because the film is so short, it is not likely to overwhelm or be duplicative of any live testimony. Accordingly, Defendants' Motions in Limine to Exclude Day in the Life Video (Docs. 199, 226) are both **DENIED**.

As stated during the hearing on June 11, Plaintiffs will be permitted to play the day-in-the-life video one time in its entirety during Sarina Bonno's testimony. In addition, the Court will allow Plaintiffs to play certain designated clips from the video, as set forth in an email sent by Plaintiffs' counsel on June 4, 2019, to accompany the testimony of Drs. Mukund and/or Burris. In total, however, the Plaintiffs may not play any portion of the

video more than *twice* to the jury. If Plaintiffs seek to play a video clip a third time at trial, they must first seek leave of Court.

Finally, as to the issue of the raw footage from both the day-in-the-life video and a separate settlement conference video, this raw footage was provided to the Court for viewing *in camera*. Defendants requested a copy of the raw footage, and Plaintiffs objected, arguing that it was exempted from production under Rule 26(b)(3). The Court agrees that the raw footage is exempt from production. Further, the Court notes that the raw footage contains nothing materially different from the footage that Defendants have already been provided. Categorically, the exceptions are as follows: (1) the raw footage shows D.M. using his fingers to feed himself; (2) the raw footage features a therapist performing physical therapy with D.M. in D.M.'s home; (3) the footage depicts D.M. being given a sponge bath by his mother on the kitchen counter/sink; and (4) the footage shows D.M.'s grandmother crying during an interview with videographers. None of this footage demonstrates that Plaintiffs "cherry picked" certain scenes to include in the final video that did not accurately depict D.M.'s daily activities.

**IT IS SO ORDERED** on this 12th day of June, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE